IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

REGGIE LITTLE                                                                    PLAINTIFF

v.                                                    CIVIL ACTION NO. 1:15-cv-00028-GHD-DAS

SMITH & NEPHEW, INC.                                                            DEFENDANT

MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS

Presently before the Court is Defendant's motion to dismiss for failure to state a claim [4]

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Upon due consideration, the

Court finds that the motion should be granted in part and denied in part, as follows.

*A. Factual and Procedural Background*

Plaintiff Reggie Little ("Plaintiff") alleges that on or about February 27, 2014 he

underwent surgery during which a Smith & Nephew Self-Tapping Screw was implanted for the

purpose of distally locking a 10 x 28 centimeter nail down Plaintiff's humerus; that the screw

"was later identified as being fractured on May 19, 2014 (less than three months [later])"; and

that "Plaintiff now suffers from serious profound and permanent physical injury and disability

attributable to the implantation" of the screw that have rendered Plaintiff "unable to perform his

normal, customary[,] and daily activities." Pl.'s Compl. [1] ¶¶ 13–15.

On February 6, 2015, Plaintiff, a Mississippi citizen, filed this diversity products liability

action against Smith & Nephew, Inc. ("Defendant"), allegedly a Delaware corporation with a

principal place of business in Tennessee "engaged in the business of designing, developing,

manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling

the Smith & Nephew Self-Tapping Screw as part of the TRIGEN Humeral Nail System." *Id.* ¶ 8.

Plaintiff asserts the following seven claims: negligence, strict products liability—defective

design, strict products liability—manufacturing defect, strict products liability—failure to warn, breach of express warranty, breach of implied warranties, and negligent misrepresentation. Plaintiff seeks actual and compensatory damages, punitive damages, pre-judgment interest, post-judgment interest, costs and expenses of litigation, reasonable attorney's fees and costs, and other relief that may be deemed appropriate.

On March 5, 2015, in lieu of filing an answer, Defendant filed the present motion to dismiss [4] pursuant to Rule 12(b)(6). Plaintiff filed a response. The matter is now ripe for review.

### B. Federal Rule of Civil Procedure 12(b)(6) Standard

Motions to dismiss pursuant to Rule 12(b)(6) "are viewed with disfavor and are rarely granted." *Kocurek v. Cuna Mut. Ins. Soc'y*, 459 F. App'x 371, 373 (5th Cir. 2012) (citing *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003)). When deciding a Rule 12(b)(6) motion to dismiss, the Court is limited to the allegations set forth in the complaint and any documents attached to the complaint. *Walker v. Webco Indus., Inc.*, 562 F. App'x 215, 216–17 (5th Cir. 2014) (per curiam) (citing *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004)).

"[A plaintiff's] complaint therefore 'must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." ' " *Phillips v. City of Dallas, Tex.*, 781 F.3d 772, 775–76 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (citing *Twombly*, 550 U.S. at 556,

127 S. Ct. 1955). "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *Webb v. Morella*, 522 F. App'x 238, 241 (5th Cir. 2013) (per curiam) (quoting *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010) (internal quotation marks omitted)). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* (quoting *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (internal quotation marks omitted)). "Dismissal is appropriate when the plaintiff has not alleged 'enough facts to state a claim to relief that is plausible on its face' and has failed to 'raise a right to relief above the speculative level.' " *Emesowum v. Hous. Police Dep't*, 561 F. App'x 372, 372 (5th Cir. 2014) (per curiam) (quoting *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. 1955).

## C. Analysis and Discussion

Plaintiff's claims against Defendant concern the safety of a medical device known as the Smith & Nephew Self-Tapping Screw, a part of Smith & Nephew's Trigen Humeral Nail System, that was implanted in Plaintiff's humerus during a humeral surgery. Regulation of medical devices is governed by the Federal Food, Drug, and Cosmetic Act, 52 Stat. 1040, *as amended by* the Medical Device Amendments of 1976, 90 Stat. 539, 21 U.S.C. § 301, which separates devices into the following three categories:

> Class I devices are those that present no unreasonable risk of illness or injury and therefore require only general manufacturing controls; Class II devices are those possessing a greater potential dangerousness and thus warranting more stringent controls; Class III devices "presen[t] a potential unreasonable risk of illness or injury" and therefore incur the FDA's strictest regulation.

*Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 343, 121 S. Ct. 1012, 148 L. Ed. 2d 854 (2001) (quoting 21 U.S.C. § 360c(a)(1)(C)(ii)(II)). The screw at issue in this case is a Class II device.

Defendant argues in its motion to dismiss that Plaintiff's seven claims all fall under the Mississippi Products Liability Act (the "MPLA") and must be dismissed for failure to allege sufficient facts in support. Plaintiff maintains that he has adequately pled all of his claims.

The Court now analyzes each of Plaintiff's claims in turn, noting that Plaintiff's claims for defective design, manufacturing defect, failure to warn, breach of express warranty, and breach of implied warranties are clearly within the purview of the MPLA, *see* Miss. Code Ann. § 11–1–63, and Plaintiff's claims for negligence and negligent misrepresentation are subsumed by his MPLA claims, as explained below.

1. Negligence Claim

First, Defendant contends that Plaintiff has failed to plead sufficient facts to state a plausible common law negligence claim because the MPLA subsumed common law negligence claims arising from defective design, manufacturing defect, and failure to warn. Defendant further contends that Plaintiff's claims fail because Plaintiff fails to offer specific allegations showing that Defendant breached its duty to Plaintiff to adequately test, inspect, package, promote, market, or distribute and that the alleged breach caused Plaintiff's injury.

Plaintiff argues in response that his common law negligence claim can coexist alongside his MPLA claims. Plaintiff further argues that he has adequately pled a plausible negligence claim. Plaintiff alleges in support of his negligence claim that Defendant "had a duty to exercise reasonable care to consumers, including [Plaintiff], in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling, and/or sale [of the screw] as part of the TRIGEN Humeral Nail System." Pl.'s Compl. ¶ 19. Plaintiff further alleges that Defendant "breached [its] duty of reasonable care to [Plaintiff] in that [it] negligently designed, developed, manufactured, tested, inspected, packaged, promoted, marketed,

4

distributed, labeled, and/or sold the [screw]." *Id.* ¶ 20. Plaintiff avers that his "injuries and damages alleged herein were and are the direct and proximate result of the carelessness and negligence of [Defendant]" in the screw's "design, development, research, manufacture, testing, packaging, promotion, marketing, labeling, sale[,] and/or distribution"; Defendant's representation that the screw was safe for its intended use when it was actually unsafe for its intended use; "[i]n failing to perform appropriate post-market testing of the [screw]"; and "[i]n failing to perform appropriate post-market surveillance of the [screw]." *Id.* ¶ 21. Plaintiff further avers that Defendant "knew or should have known that consumers such as [Plaintiff] would foreseeably suffer injury as a result of [Defendant's] failure to exercise reasonable and ordinary care." *Id.* ¶ 22. Finally, in this respect, Plaintiff alleges that as a result of Defendant's alleged negligence Plaintiff has "suffered severe and permanent physical injuries, including but not limited to substantial pain and suffering, significant expenses for medical care and treatment, and a loss of earning capacity." *Id.* ¶ 23.

The current version of the MPLA went into "force from and after July 1, 2014." *See* 2014 Miss. Laws WL No. 48 (H.B. 680). "[I]f a statute is to apply 'effective from and after passage' it is not to apply to causes of action that have accrued prior to the passage of the statute." *Tie–Reace Hollingsworth ex rel. McDonald v. City of Laurel*, 808 So. 2d 950, 954 (Miss. 2002). "A cause of action accrues only when it comes into existence as an enforceable claim; that is, when the right to sue becomes vested, and the theory that an injury has to happen before a tort is considered complete." *Oaks v. Sellers*, 953 So. 2d 1077, 1081 (Miss. 2007) (internal quotation marks and citation omitted). This action was filed on February 6, 2015; alleges that a defect in the screw was discovered on May 19, 2014; and alleges that Plaintiff "now suffers from serious profound and permanent physical injury and disability attributable to

the implantation of the [screw]." Pl.'s Compl. [1] ¶ 15 (emphasis added). Plaintiff does not allege a specific date whereby he discovered his injury, nor does he allege from what date he began to suffer his injury. At this stage in the litigation, a factual issue exists as to whether Plaintiff's alleged injury began or was discovered when the previous version of the MPLA was in effect or since the current version of the MPLA has been in effect. Therefore, the Court cannot yet determine which version of the MPLA applies to the case *sub judice*. The Court will thus look at the negligence claim from the perspective of both the current MPLA and previous MPLA.

The Mississippi Supreme Court recently instructed the following with respect to statutory interpretation:

> This Court does not "decide what a statute should provide, but [ ] determine[s] what it does provide." *Lawson v. Honeywell Int'l, Inc.*, 75 So. 3d 1024, 1027 (Miss. 2011). "The Court's goal is to give effect to the intent of the Legislature." *Id.* To determine that intent, this Court looks first to the language of the statute. *Id.* "If the words of a statute are clear and unambiguous, the Court applies the plain meaning of the statute and refrains from using principles of statutory construction." *Id.* Furthermore, words and phrases contained in a statute are to be given their common and ordinary meaning. *Id.* at 1028.

*Palermo v. LifeLink Found., Inc.*, 152 So. 3d 1099, 1105 (Miss. 2014). With this standard in mind, the Court turns to the two different version of the MPLA.

Under the previous version of the MPLA, a determination of whether a plaintiff's negligence claim can exist alongside his other MPLA claims requires this Court to navigate unsettled Mississippi law. The previous version of the MPLA states that it applies "in any action for damages caused by a product except for commercial damage to the product itself." *See* Laws 2004, 1st Ex. Sess., Ch. 1, § 3, eff. September 1, 2004, *amended by* Laws 2014, Ch. 383 (H.B. No. 680), § 1, eff. July 1, 2014. To date, the Mississippi Supreme Court has never clearly

indicated whether negligence claims are abrogated by the MPLA and as recently as 2012 declined to decide that issue. *See Phillips 66 Co. v. Lofton*, 94 So. 3d 1051, 1063 (Miss. 2012) ("[G]iven that we have found that [the plaintiff] met his evidentiary burden under MPLA, it is unnecessary for this Court to reach the issue of whether [his] negligence claim was subsumed under MPLA . . . ."). In interpreting Mississippi law that same year, the Fifth Circuit stated that negligence claims can be brought alongside strict liability claims, but "a party may not disguise a products liability claim as a negligence claim to avoid dismissal." *Murray v. GM, L.L.C.*, 478 F. App'x 175, 181 (5th Cir. 2012) (per curiam) (citing *McSwain v. Sunrise Med., Inc.*, 689 F. Supp. 2d 835, 844 (S.D. Miss. 2010)). *See McSwain*, 689 F. Supp. 2d at 846 (the plaintiff's "common law negligence claims fail because they are mere restatements of the claims brought under the MPLA, and . . . are not supported by sufficient evidence"); *Murray v. GM, LLC*, No. 3:10–CV– 188 HTW–LRA, 2011 WL 3684517, at *3 (S.D. Miss. Aug. 22, 2011) ("[W]hen a plaintiff's negligence claim cannot survive apart from his MPLA claim, regardless of how the plaintiff labels the claim . . . the claim is governed by the MPLA."); *McKee v. Bowers Window & Door Co.*, 64 So. 3d 926, 940 (Miss. 2011) (the plaintiffs' "negligence claim fail[s] to present any new discussion or claim that does not relate back to the . . . products liability claim")).

With regard to specific claims, courts in Mississippi generally held that a negligence claim arising from defective design or failure to warn could not exist as a stand-alone claim because MPLA design defect claims and failure-to-warn claims necessarily required a negligence analysis. *See Hill v. Forest Labs., Inc.*, No. 2:06-CV-244-KS-MTP, 2014 WL 2558756, at *2 (S.D. Miss. June 6, 2014) (the plaintiff's claim that defendant "negligently failed to warn of the alleged association between Lexapro and suicide "was plainly a product liability claim within the scope of the MLA"); *Hankins v. Ford Motor Co.*, No. 3:08-cv-639, 2011 WL

6180410, at *4–5 (S.D. Miss. Dec. 13, 2011) (quoting *Palmer v. Volkswagen of America, Inc.*, 905 So. 2d 564, 599–600 (Miss. Ct. App. 2003) (internal quotation marks omitted) ("[W]hen a plaintiff claims defective design under the MPLA, a jury instruction on negligence is not necessary . . . because the risk-utility test [in the MPLA] requires the jury to reach a conclusion about the manufacturer's conduct[;] the test is a version of Judge Learned Hand's negligence calculus. Therefore, . . . a jury performing risk-utility analysis necessarily makes a negligence determination."); *McSwain*, 689 F. Supp. 2d at 846 ("The claim that [defendant] negligently failed to warn users of the danger of the chair without anti-tip tubes is a restatement of the failure to warn cause of action under the MPLA."); *Jowers v. BOC Group, Inc.*, 2009 WL 995613, at *4 (S.D. Miss. Apr. 14, 2009) *aff'd in part, vacated in part on other grounds, and remanded sub nom.*, *Jowers v. Lincoln Elec. Co.*, 617 F.3d 346 (5th Cir. 2010) ("[T]he greater weight of the somewhat-mixed authority holds that negligence-based claims of product defect [against a manufacturer] are abrogated by the MPLA."); *Lundy v. Conoco, Inc.*, No. 3:05-cv-477, 2006 WL 3300397, at *2 (S.D. Miss. Nov. 10, 2006) ("The Court finds that the failure to warn/inadequate warnings claims, regardless of the fact that Plaintiffs labeled one claim 'products liability' and the other 'negligence', are both governed by the [MPLA]."); *Bennett v. Madakasira*, 821 So. 2d 794, 804 (Miss. 2002) ("Although a plaintiff in a prescription drug liability case may alternatively rely on strict liability and negligence principles, these principles merge into one inquiry; the adequacy of the defendant's warnings."); *Palmer*, 905 So. 2d at 600, *aff'd in part, rev'd in part on other grounds*, 904 So. 2d 1077 (Miss. 2005) ("[L]ike a claim of design defect, a claim of inadequate warnings under the MPLA requires the jury to perform negligence analysis in assessing liability. . . . [Thus], the court need not present the jury with a separate negligence instruction on inadequate warnings.").

However, Mississippi case law interpreting the previous version of the MPLA is unclear as to whether a negligence claim arising from a manufacturing defect can exist as a stand-alone negligence claim. The Fifth Circuit has determined under Mississippi law that "[t]he risk-utility analysis [employed in defect design and failure-to-warn claims] applies to design defect cases, not manufacturing defect cases," thus hinting that a negligence claim premised on manufacturing defect might exist alongside an MPLA manufacturing defect claim. *See Leverette v. Louisville Ladder Co.*, 183 F.3d 339, 342 (5th Cir. 1999); *see also Joiner v. Genlyte Thomas Grp., L.L.C.*, No. 1:09-CV-00093-GHD, 2012 WL 567201, at *4 (N.D. Miss. Feb. 21, 2012) (a negligence claim arising from manufacturing defect might exist alongside a separate MPLA manufacturing defect claim). *But see Deese v. Immunex Corp.*, No. 3:11-CV-373-DPJ-FKB, 2012 WL 463722, at *5 (S.D. Miss. Feb. 13, 2012) ("It is unclear whether Mississippi law recognizes such a negligence claim separate and apart from the MPLA claims for negligent design or failure to warn.").

From the above, it is clear that under the previous version of the MPLA, purported negligence claims that merely restate the elements of defective design or failure-to-warn claims brought under the MPLA are subsumed by the MPLA. However, it is unclear whether under the previous version of the MPLA purported negligence claims premised on manufacturing defect might exist alongside a manufacturing defect claim brought under the MPLA.

The current version of the MPLA, which was amended on March 17, 2014, provides that the MPLA governs "in any action for damages caused by a product, including, but not limited to, any action based on a theory of strict liability in tort, negligence[,] or breach of implied warranty, except for commercial damage to the product itself[.]" *See* Miss. Code Ann. § 11-1-63. By its clear language, the current MPLA subsumes actions for damages caused by a product based on

negligence; this would include negligence claims premised on design defect, manufacturing defect, and failure to warn. *See, e.g., Scirocco v. Ford Motor Co.*, No. 5:13-CV-128-KS-MTP, 2015 WL 2451225, at *1 (S.D. Miss. May 21, 2015) (holding post-MPLA amendment that negligence claims arising from damages caused by an allegedly defective product are subsumed by the MPLA).

Under the current version of the MPLA, Plaintiff's allegations of negligence support an "action for damages caused by a product . . . based on a theory of . . . negligence" and do not support a claim for "commercial damage to the product itself." *See* Miss. Code Ann. § 11-1-63. Therefore, under the current version of the MPLA, it is clear that Plaintiff's negligence claim premised on design defect, manufacturing defect, and failure to warn are subsumed by the MPLA and cannot exist as a stand-alone negligence claim.

Under the previous version of the MPLA, Plaintiff's allegations of negligence premised on design defect and failure to warn are mere repetitions of his MPLA claims for design defect and failure to warn and must be dismissed. The only practical difference in the application of either version of the MPLA is the possibility that under the previous version of the MPLA Plaintiff's negligence claim premised on manufacturing defect might form the basis of a viable stand-alone negligence claim.

As stated, because the accrual of the cause of action cannot be determined at this stage of the litigation, the Court cannot at this stage determine which version of the MPLA applies to the case *sub judice*. In an abundance of caution, the Court will preserve Plaintiff's negligence claim premised on manufacturing defect at the Rule 12(b)(6) stage, but will dismiss all other allegations of negligence. Defendant's motion to dismiss shall be granted in part and denied in part on this ground.

## 2. Strict Products Liability—Defective Design

Second, Defendant contends that Plaintiff fails to plead sufficient facts to state a plausible design defect claim, specifically contending that Plaintiff fails to allege the specific alleged defect or the feature of the screw's design that caused him harm. Defendant further contends that Plaintiff fails to identify a specific feasible alternative design that would have prevented the harm, as is required by the MPLA, and instead relies exclusively on legal conclusions couched as factual allegations that a feasible alternative design existed.

Plaintiff argues in response that he adequately identifies the defect in the screw as follows: the screw was found fractured less than three months after it was implanted in Plaintiff's humerus. Plaintiff further maintains that in order to adequately account for all viable alternative designs of the screw he must first be afforded the opportunity to conduct reasonable discovery and should not be penalized at this stage for failing to produce an expert report with his complaint.

All manufacturers, including pharmaceutical manufacturers, have a duty to design reasonably safe products that are free from defects. *See* Miss. Code Ann. § 11-1-63; *Cross v. Forest Labs.*, --- F. Supp. 3d ----, 2015 WL 1534458, at *5 (N.D. Miss. Apr. 6, 2015); *Batts v. Tow-Motor Forklift Co.*, 978 F.2d 1386, 1400 (Miss. 1992) (citing *Ward v. Hobart Mfg. Co.*, 450 F.2d 1176, 1182 (5th Cir. 1971) (Jolly, J., concurring)). For a plaintiff to prevail on a design defect claim in Mississippi, he must prove by a preponderance of the evidence that at the time the product left the control of the manufacturer, designer, or seller:

> (i) . . . The product was designed in a defective manner, . . . ; and
>
> (iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought[; and]

11

\*\*\*

(i) The manufacturer or seller knew, or in light of reasonably available knowledge or in the exercise of reasonable care should have known, about the danger that caused the damage for which recovery is sought; and

(ii) The product failed to function as expected and there existed a feasible design alternative that would have to a reasonable probability prevented the harm. A feasible design alternative is a design that would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality[,] or desirability of the product to users or consumers.

Miss. Code Ann. § 11–1–63(a)(1)(i), (iii), (f)(i)–(ii). The Mississippi Supreme Court has summarized these elements as follows:

The danger presented by the product's design was known or should have been known to the manufacturer [or seller] (i.e., the danger was foreseeable); (2) the product failed to function as expected (as a result of a design characteristic); (3) an alternative design existed that would not impair the product's usefulness or desirability; and (4) the alternative design would have to a reasonable probability prevented the harm.

*Phillips 66 Co.*, 94 So. 3d at 1060 (quoting *Williams v. Bennett*, 921 So. 2d 1269, 1274 (Miss. 2006) (internal quotation marks omitted)).

In the case *sub judice*, Plaintiff alleges that Defendant designed, manufactured, and sold the screw, Pl.'s Compl. [1] ¶ 25; that the screw was defective and unreasonably dangerous to consumers, *id.* ¶ 26; that the screw was defective in its design or formulation in that it was identified as being fractured approximately three months after being implanted in Plaintiff's humerus, *id.* ¶¶ 14, 27; that the screw was expected to reach, and did reach, consumers in Mississippi and the United States, including Plaintiff, without substantial change in the condition in which it was sold, *id.* ¶ 28; that the screw was designed, manufactured, and sold by Defendant in a defective and unreasonably dangerous condition, *id.* ¶ 29; that "at the time the [screw] left

the control of Defendant[ ], there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of [Plaintiff's] injuries without impairing the reasonably anticipated or intended function of the product" and that "[t]hese safer alternative designs were economically and technologically feasible[ ]," *id.* ¶ 30; that Defendant knew or should have known that consumers, including Plaintiff, would not and could not investigate to discover the latent defects in the screw, *id.* ¶ 31; that Plaintiff used the screw as intended in a manner reasonably foreseeable to Defendant and "as involving a substantial danger not readily apparent if adequate instructions regarding use and warnings of the danger were not provided," *id.* ¶ 32; that Plaintiff "was a foreseeable user of the [screw]," *id.* ¶ 33; that Defendant's actions "were performed willfully, intentionally[,] and with reckless disregard for the rights of [Plaintiff] and the public," *id.* ¶ 34; and that as a direct and proximate result Plaintiff "suffered severe and permanent physical injuries, including but not limited to substantial pain and suffering, significant expenses for medical care and treatment, and a loss of earning capacity," *id.* ¶ 35.

In the opinion of this Court, Plaintiff's design defect claim satisfies the Rule 12(b)(6) standard, because he alleges each element of a design defect claim under the MPLA. Although Defendant argues to the contrary, Plaintiff alleges a defect in the design of the screw, that is, that the screw was discovered to be fractured three months after it was implanted in Plaintiff's humerus. *See Austin v. Bayer Pharms. Corp.*, No. 5:13–CV–28–KS–MTP, 2013 WL 5406589, at *5 (S.D. Miss. Sept. 25, 2013) (in a design defect claim, plaintiff must identify some defect in design of product to survive Rule 12(b)(6) motion to dismiss); *Adams v. Energizer Holdings, Inc.*, No. 3:12CV797TSL–JMR, 2013 WL 1791373, at *2 (S.D. Miss. Apr. 19, 2013) (same); *Deese*, 2012 WL 463722, at *3 (same). Plaintiff further alleges that the defect proximately caused the harm for which recovery is sought. *See Adams*, 2013 WL 1791373, at *2 (in a design

13

defect claim, plaintiff must allege that the alleged defect proximately caused the harm for which recovery is sought); *Chatman v. Pfizer, Inc.*, No. 5:11–CV–69–DCB–JMR, 2013 WL 1305506, at *4 (S.D. Miss. Mar. 28, 2013) (same). Finally, Plaintiff alleges that a feasible design alternative existed that would have to a reasonable probability prevented the harm. *See Adams*, 2013 WL 1791373, at *2 (in a design defect claim, plaintiff must allege that a feasible alternative design exists); *Chatman*, 2013 WL 1305506, at *4 (same). Because Plaintiff has satisfactorily alleged a design defect claim under Mississippi law, Defendant's motion to dismiss shall be denied on this ground.

### 3. Strict Products Liability—Manufacturing Defect

Third, Defendant contends that Plaintiff fails to plead sufficient facts to state a plausible defective manufacturing claim, specifically contending that Plaintiff fails to set forth facts demonstrating what particular defect occurred in the manufacture of the screw or how any alleged defect caused Plaintiff's injuries. Plaintiff argues in response that his complaint alleges that the screw did not meet the manufacturer's specifications because it fractured shortly after being implanted into Plaintiff's arm, a result that should not have occurred if the screw was manufactured per the manufacturer's specifications, and that he has adequately alleged how the defect caused his injuries. For a plaintiff to prevail on a manufacturing defect claim in Mississippi, he must prove by a preponderance of the evidence that at the time the product left the control of the manufacturer or designer:

> (i) 1. The product was defective because it deviated in a material way from the manufacturer's or designer's specifications or from otherwise identical units manufactured to the same manufacturing specifications, . . .; and
>
> (ii) The defective condition rendered the product unreasonably dangerous to the user or consumer; and

14

(iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

Miss. Code Ann. § 11–1–63(a)(1)(i)–(iii).

"[M]anufacturing defect claims involve allegations not that the entire product line in question was defectively designed, but rather that the specific product purchased by the consumer was manufactured in a way which deviated from the design specifications." *Hickory Springs Mfg. Co. v. Star Pipe Prods., Ltd.*, 991 F. Supp. 2d 778, 782 (N.D. Miss. Jan. 14, 2014). Therefore, in his complaint, a plaintiff must "allege how the subject product(s) deviated from the manufacturers' specifications or other units." *Adams*, 2013 WL 1791373, at *3; *accord Deese*, 2012 WL 463722, at *3.

In the case *sub judice*, Plaintiff recites the elements of a manufacturing defect claim and alleges that the screw was "designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendant[ ] in a defective and unreasonably dangerous condition"; that the screw "contained manufacturing defects which rendered the product unreasonably dangerous"; and that the screw "[was] not made in accordance with [Defendant's] specifications or performance standards." Pl.'s Compl. [1] ¶ 39. As with his other claims, Plaintiff sets forth the nature of his allegedly resulting severe and permanent injuries.

In the opinion of the Court, Plaintiff has adequately set forth the elements required to sustain his manufacturing defect claim past the Rule 12(b)(6) stage. Although his claim is not supported with great detail, great detail is not necessary at the motion-to-dismiss stage. Plaintiff's allegations are sufficient to put Defendant on notice that Plaintiff claims that the screw used was defectively manufactured. Accordingly, Defendant's motion to dismiss shall be denied on this ground.

4. Strict Products Liability—Failure to Warn

Fourth, Defendant contends that Plaintiff fails to plead sufficient facts to state a plausible failure-to-warn claim, contending specifically that Plaintiff never links his purported injuries to Defendant's alleged failure to adequately warn of the risks and side effects of its use, that Plaintiff never suggests what those risks and side effects were, and that Plaintiff never explains how the warnings were insufficient. Defendant also argues that the learned intermediary doctrine bars Plaintiff's claim.

Plaintiff argues in response that he has alleged all he can without the benefit of discovery. Plaintiff further argues that even if the learned intermediary defense is available its applicability is a jury question in this case.

For a plaintiff to prevail on a failure-to-warn claim in Mississippi, he must prove by a preponderance of the evidence that at the time the product left the control of the manufacturer, designer, or seller:

> (i) . . . The product was defective because it failed to contain adequate warnings or instructions, . . . ; and
>
> (ii) The defective condition rendered the product unreasonably dangerous to the user or consumer; and
>
> (iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

Miss. Code Ann. § 11–1–63(a)(i)(2), (ii) (iii). On such a claim, a plaintiff must also prove the following:

> (c)(i) . . . [A]t the time the product left the control of the manufacturer, designer[,] or seller, the manufacturer, designer[,] or seller knew or in light of reasonably available knowledge should have known about the danger that caused the damage for which recovery is sought and that the ordinary user or consumer would not realize its dangerous condition[; and]

(ii) An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates sufficient information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to an ordinary consumer who purchases the product; or in the case of a prescription drug, medical device[,] or other product that is intended to be used only under the supervision of a physician or other licensed professional person, taking into account the characteristics of, and the ordinary knowledge common to, a physician or other licensed professional who prescribes the drug, device[,] or other product.

Miss. Code Ann. § 11–1–63(c).

Thus, "[a] manufacturer is liable under a failure-to-warn theory if the product 'failed to contain adequate warnings,' the inadequate warnings 'rendered the product unreasonably dangerous to the user or consumer,' and the inadequate warnings 'proximately caused the damages for which recovery is sought.' " *Union Carbide Corp. v. Nix, Jr.*, 142 So. 3d 374, 385 (Miss. 2014). The Fifth Circuit in interpreting Mississippi law has stated:

> Under the learned intermediary doctrine, which is codified in the Mississippi Products Liability Act, a manufacturer of a prescription drug has no duty to warn the end user of the drug's possible adverse effects. *Wyeth Labs., Inc. v. Fortenberry*, 530 So. 2d 688 (Miss. 1988). The manufacturer's duty to warn runs only to the prescribing physician, who acts as an intermediary between the manufacturer and the patient. *Id.* The learned intermediary doctrine applies to medical devices as well as prescription drugs. *Moore v. Mem. Hosp. of Gulfport*, 825 So. 2d 658, 662 n.6 (Miss. 2002).

*Smith v. Johnson & Johnson, Inc.*, 483 F. App'x 909, 913–14 (5th Cir. 2012) (per curiam). "In order to make out a case for failure to warn under the learned intermediary doctrine, the plaintiff must establish that the treating physician, or a reasonable physician in the treating physician's position, would not have used the product had he received an adequate warning." *Id.* at 914 (citing *Thomas v. Hoffman–LaRoche, Inc.*, 949 F.2d 806, 812 (5th Cir. 1992)).

In the case *sub judice*, Plaintiff alleges the screw was defective because it was not accompanied by adequate instructions and/or warnings of the full nature and extent of the risks and side effects associated with its use. *See* Pl.'s Compl. [1] ¶ 44. He also alleges that the implantation of the screw caused him to suffer severe and permanent physical injuries. *Id.* ¶ 49. However, he fails to allege that the physician would not have used the screw if he had received an adequate warning. In fact, Plaintiff fails to mention his physician at all in his failure-to-warn allegations and instead alleges that Defendant failed to warn "consumers, including [Plaintiff]" and alleges that Plaintiff was an "ultimate user[ ] or consumer[ ]" of the screw. *Id.* ¶¶ 43–46. Plaintiff's failure to allege that Defendant failed to warn his physician of the screw is fatal to his failure-to-warn claim. *See Austin*, 2013 WL 5406589, at \*7; *Gardley-Starks v. Pfizer, Inc.*, 917 F. Supp. 2d 597, 610–11 (N.D. Miss. Jan. 10, 2013); *Deese*, 2012 WL 463722, at \*4. Because Plaintiff fails to adequately allege a failure-to-warn claim under the MPLA, Defendant's motion to dismiss shall be granted on this ground.

### 5. Breach of Express Warranty

Next, Defendant contends that Plaintiff fails to plead sufficient facts to state a plausible breach of express warranty claim, specifically contending that Plaintiff fails to identify a specific factual representation or promise made by Defendant upon which Plaintiff relied in electing to use the screw and fails to refer to any specific express warranties made by Defendant.

Plaintiff argues in response that he has satisfied the Rule 12(b)(6) standard on his breach of express warranty claim by alleging that "Defendant expressly warranted that the [screw] was safe and fit for use by consumers and users including [Plaintiff] for its intended purpose, that it was of merchantable quality, that it did not produce any dangerous side effects, and that it was adequately tested and fit for its intended use." Pl.'s Compl. ¶ 51.

For a plaintiff to prevail on a breach of express warranty claim in an action for damages caused by a product in Mississippi, he must prove by a preponderance of the evidence that at the time the product left the control of the manufacturer, designer, or seller:

> (i) . . . The product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product; and
>
> (ii) The defective condition rendered the product unreasonably dangerous to the user or consumer; and
>
> (iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

Miss. Code Ann. § 11-1-63(a)(i)(4), (ii), (iii).

"[A]n express warranty is any affirmation of fact or promise which concerns the product and becomes part of the basis for the purchase of such a product. Fault does not need to be shown to establish a breach. The plaintiff need only show that the product did not live up to its warranty." *Scirocco*, 2015 WL 2451225, at *4 (quoting *Forbes v. GMC*, 935 So. 2d 869, 876 (Miss. 2006) (quoting *Austin v. Will–Burt Co.*, 232 F. Supp. 2d 682, 687 (N.D. Miss. 2002), *aff'd*, 361 F.3d 862 (5th Cir. 2004) (internal quotation marks omitted)); *see also* Miss. Code Ann. § 75-2-313(1)(a). The plaintiff must ultimately show that he relied on the alleged representation. *See* Miss. Code Ann. 11–1–63(a)(i)(4).

Plaintiff alleges the existence of an express warranty as follows: "Defendant[ ] expressly warranted that the [screw] . . . did not produce any dangerous side effects[ ] and that it was adequately tested and fit for its intended use." Pl.'s Compl. [1] ¶ 51.[1] Plaintiff also alleges that Defendant "breached said express warranties, in that the [screw] was not safe and fit for its

---

[1] Plaintiff's allegations in the same paragraph that Defendant expressly warranted that the screw "was safe and fit for use by consumers and users including [Plaintiff] for its intended purpose" and "that [the screw] was of merchantable quality" support Plaintiff's claim for breach of implied warranties, not his claim for breach of express warranty. Thus, those allegations will be analyzed with respect to that claim only.

intended use." *Id.* ¶ 55. Plaintiff further alleges that the defective condition of the screw rendered it unreasonably danger to the user or consumer. *See id.* ¶ 53. Plaintiff avers that he relied on Defendant's express warranties. *Id.* ¶ 54. Finally, Plaintiff avers that as a result of the alleged breach of express warranty "and the unreasonably dangerous and defective characteristics of the [screw], [Plaintiff] suffered severe and permanent physical injuries . . . ." *Id.* ¶ 56. In light of these allegations, the Court finds that Plaintiff has sufficiently alleged a claim for breach of express warranty. Therefore, Defendant's motion to dismiss shall be dismissed on this ground.

      6. Breach of Implied Warranties

Next, Defendant contends that Plaintiff fails to plead sufficient facts to state a plausible breach of implied warranties claim, specifically contending that Plaintiff fails to establish that the Trigen Humeral Nail System was not merchantable at the time of sale, how the Trigen Humeral Nail System was defective, and how any defect proximately caused his injury. Defendant further contends that the claim fails because Plaintiff fails to allege that he complied with Mississippi's litigation-notice requirement in order for Defendant to have an opportunity to cure the alleged breach. Finally, Defendant contends that Plaintiff's claim fails because Plaintiff does not allege that he intended to use the Trigen Humeral Nail System for any purpose other than its intended use, as is required to sustain a claim for breach of the implied warranty of fitness for a particular purpose.

Plaintiff argues in response that his complaint satisfies the pleading requirements for such a claim and adequately alleges the defect of the screw. Plaintiff further argues that he was not required to satisfy a litigation-notice requirement, because this case is not a lemon law case brought under the Uniform Commercial Code and thus has no such requirement.

The MPLA now states that it applies "in any action for damages caused by a product, including, but not limited to, any action based on a theory of strict liability in tort, negligence[,] or breach of implied warranty . . . , except for commercial damage to the product itself[.]" Miss. Code Ann. §11-1-63. However, no subsection enumerates the elements of a breach of implied warranty claim under the MPLA.

Prior to the 2014 amendment of the MPLA, the MPLA did not explicitly cover claims for breach of implied warranty. In interpreting Mississippi law in 2012, the Fifth Circuit held that "the MPLA did not abrogate all UCC warranty claims," but allowed such claims to be brought pursuant to Article 2 of the Uniform Commercial Code, which provides for claims of implied warranty against sellers of goods. *See Murray*, 478 F. App'x at 180. Although it is clear that by its terms the MPLA now governs such implied warranty claims, it is also clear that the current MPLA provides no elements for such a claim. No case law or legislative history supports that the MPLA subsumes implied warranty claims.

Accordingly, this Court looks to Mississippi case law to determine the elements a plaintiff must plead to sustain such a claim past the Rule 12(b)(6) stage. To recover on a claim for breach of an implied warranty of merchantability, a plaintiff must demonstrate the following:

> (1) That a "merchant" sold "goods," and he was a merchant with respect to "goods of the kind" involved in the transaction, (2) which were not merchantable at the time of sale, and (3) injuries and damages to the plaintiff or his property, (4) caused proximately and in fact by the defective nature of the goods, and (5) notice to the seller of the injury.

*Watson Quality Ford, Inc. v. Casanova*, 999 So. 2d 830, 834 (Miss. 2008) (citing Miss. Code Ann. § 75-2-314). With respect to the last element, the Mississippi Supreme Court has noted that "though there may have been a breach of the warranty of merchantability, the seller has a right to attempt cure. An opportunity for the seller to cure is a reasonable requisite of a buyer's

right of recovery." *Id.* at 834–35. To survive a Rule 12(b)(6) motion, a plaintiff is required to plead specific facts that he provided such notice. *Austin*, 2013 WL 5406589, at *9 (citing *Iqbal*, 556 U.S. at 664, 129 S. Ct. 1937; *Hershey v. Energy Transfer Partners., L.P.*, 610 F.3d 239, 245 (5th Cir. 2010)). In the case *sub judice*, Plaintiff has failed to allege that any such notice was provided to Defendant, and accordingly, his claim for breach of the implied warranty of merchantability must be dismissed. Therefore, Defendant's motion to dismiss shall be granted on this ground.

To recover on a claim for breach of an implied warranty of fitness for a particular purpose under Mississippi law, a plaintiff is required to demonstrate the following:

> (1) the seller at the time of the contracting had reason to know the particular purpose for which the goods were required; (2) the reliance by the plaintiff as buyer upon the skill or judgment of the seller to select suitable goods, and (3) the goods were unfit for the particular purpose.

*Watson Quality Ford, Inc.*, 999 So. 2d at 835 (quoting *Garner v. S & S Livestock Dealers, Inc.*, 248 So. 2d 783, 785 (Miss. 1971) (internal quotation marks omitted) (citing Miss. Code Ann. § 75-2-315)). "[N]o claim for breach of the implied warranty of fitness for a particular purpose will lie when a product is to be used for its ordinary purpose." *Id.* (citing *Ford Motor Co. v. Fairley*, 398 So. 2d 216, 219 (Miss. 1981)). Plaintiff specifically alleges that the screw was used for its ordinary purpose, that is, as part of the Trigen Humeral Nail System in his humerus surgery. Accordingly, Plaintiff has not alleged a viable breach of implied warranty of fitness for a particular purpose claim. The same shall be dismissed, and Defendant's motion to dismiss shall be granted on this ground.

7. Negligent Misrepresentation

Finally, Defendant contends that Plaintiff fails to plead sufficient facts to state a plausible negligent representation claim, specifically contending that Plaintiff fails to plead his claim with particularity which is required to sustain a claim of negligent misrepresentation or fraud. Defendant further contends that Plaintiff's complaint fails to point to any specific representations that Defendant may have made, how any such representations were made, how any such representations were material, how Defendant failed to exercise the requisite degree of diligence, how Plaintiff or his physician relied on the representations, or how the representations proximately caused his injuries.

Plaintiff argues in response that he has alleged all necessary elements to make out a negligent misrepresentation claim, including that he relied on Defendant's representation with respect to the screw because he allowed the screw to be implanted in his body.

Numerous Mississippi district courts have held that the MPLA subsumes common law negligent misrepresentation claims based on a defective product. *See Austin*, 2013 WL 5406589, at *8; *Gardley–Starks*, 917 F. Supp. 2d at 602; *McSwain*, 689 F. Supp. 2d at 844–45; *Lashley v. Pfizer, Inc.*, 877 F. Supp. 2d 466, 471 (S.D. Miss. 2012); *Murray*, No. 3:10–CV–188 HTW–LRA, 2011 WL 3684517, at *3 (S.D. Miss. Aug. 22, 2011), *aff'd*, 478 F. App'x 175 (5th Cir. 2012); *Walker v. George Koch Sons, Inc.*, 610 F. Supp. 2d 551, 562–63 (S.D. Miss. 2009). *See also Jowers*, 2009 WL 995613, at *9 (discussing *R.J. Reynolds Tobacco Co. v. King*, 921 So. 2d 268 (Miss. 2005) (negligent misrepresentation claim may not be product liability claim if affirmative representations were made in addition to and separate from those in connection with a failure-to-warn claim)).

Because Plaintiff in the case *sub judice* alleges that Defendant made representations with respect to the screw that mirror his allegations concerning the alleged representations in his

23

failure-to-warn claim, the Court finds that his negligent misrepresentation claim is subsumed by the MPLA and must be dismissed. Accordingly, Defendant's motion to dismiss is granted on this ground.

*D. Conclusion*

In sum, Defendant's motion to dismiss [4] is GRANTED IN PART AND DENIED IN PART, as follows:

(1) Defendant's motion to dismiss [4] is GRANTED insofar as it challenges Plaintiff's claims for failure to warn, breach of implied warranties, negligent misrepresentation, and negligence premised on failure to warn and design defect;

(2) Plaintiff's claims for failure to warn, breach of implied warranties, negligent misrepresentation, and negligence premised on failure to warn and design defect are DISMISSED;

(3) Defendant's motion to dismiss [4] is DENIED insofar as it challenges Plaintiff's claims for design defect, manufacturing defect, breach of express warranty, and negligence premised on manufacturing defect; and

(4) Plaintiff's claims for design defect, manufacturing defect, breach of express warranty, and negligence premised on manufacturing defect shall proceed.

An order in accordance with this opinion shall issue this day.

THIS, the 11th day of June, 2015.

_____
SENIOR U.S. DISTRICT JUDGE